UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Michael C. Dillon
and Jennifer Kresge,
    Plaintiffs

    v.                                    Civil No. 07-cv-70-SM
                                          Opinion No. 2008 DNH 019
Select Portfolio Servicing;
Harmon Law Offices, P.C.;
PMI Group, Inc.; Merrill Lynch
Mortgage Capital; Merrill Lynch
Mortgage Investors; and
LaSalle Bank National Association,
    Defendants

**O R D E R**

In March of 2001, Michael Dillon borrowed approximately $100,000 from Alliance Funding. That loan was secured by a mortgage deed to property Dillon owned in Manchester, New Hampshire. Dillon says that approximately six months later the promissory note evidencing his obligation to repay that loan was, without his knowledge, transferred to an entity then known as Fairbanks Capital Corporation. Although Dillon claims he made timely payments to his lender (Alliance) in both September and October of 2001, the new holder of the note (Fairbanks) declared the note in default.

Eventually, Fairbanks issued a notice of foreclosure, which prompted Dillon to file suit in state court seeking to enjoin the foreclosure.  He prevailed.  The state court enjoined Fairbanks from proceeding with the foreclosure.  Nevertheless, Dillon claims Fairbanks (and entities which subsequently bought or took an assignment of Dillon's promissory note) continued to harass him and refused to comply with aspects of the state court's order.  That, in turn, prompted Dillon and his fiancé, Jennifer Kresge, to file this suit.

In their twenty-four count complaint, Dillon and Kresge advance a wide array of both state and federal claims against six different defendants, asserting, among other things, that they engaged in unlawful debt collection practices, violated the Federal Fair Credit Reporting Act, breached various contractual obligations, and committed a number of negligent and intentional torts.  Defendants Select Portfolio Servicing, Inc., Harmon Law Offices, P.C., Merrill Lynch Mortgage Capital, Merrill Lynch Mortgage Investors, and LaSalle Bank National Association move to dismiss all of plaintiffs' claims, on grounds that they are precluded by the applicable statute of limitations, barred by the doctrine of claim preclusion (res judicata), and/or fail to state a viable cause of action.  Those defendants also say plaintiff

Jennifer Kresge lacks standing to recover under any theory advanced in the second amended complaint.  The final defendant, PMI Group, Inc., also moves to dismiss all of plaintiffs' claims, asserting that none states a viable cause of action.  Plaintiffs object.

### Standard of Review

A defendant seeking dismissal of some or all of a plaintiff's claims bears a heavy burden: dismissal is appropriate only if the defendant demonstrates that "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."  Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).  But, as the court of appeals has observed, although "the threshold for stating a claim may be low, . . . it is real."  Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).  Consequently, to survive a motion to dismiss, a plaintiff's

complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery." <u>Gooley</u>, 851 F.2d at 515.

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court reviews the plaintiff's complaint in a highly deferential manner.  It must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." <u>Martin v. Applied Cellular Tech.</u>, 284 F.3d 1, 6 (1st Cir. 2002). Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law.  <u>See</u> <u>Resolution Trust Corp. v. Driscoll</u>, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted).  <u>See also</u> <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987).

**Background**

Viewed in the light most favorable to plaintiffs, the relevant facts alleged in the second amended complaint, as well as Dillon's state court petition for injunctive relief, are as follows.[1]

In March of 2001, Dillon borrowed $100,300 from Alliance Funding.  That loan was evidenced by a promissory note, secured by a mortgage deed to property Dillon owned in Manchester, New Hampshire.  In October of 2001, Dillon was informed that, going forward, his promissory note would be serviced by Select Portfolio (then operating as "Fairbanks Capital Corporation" – for clarity, the court will refer to that entity as Select

---

[1]   Typically, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment.  See Fed. R. Civ. P. 12(b).  There is, however, an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted).  See also Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  Since there does not appear to be any dispute concerning the content of the state court pleadings and orders, the court may properly consider those documents without converting defendants' motions into ones for summary judgment.

Portfolio).  According to Dillon's state court petition for injunctive relief, Alliance assigned his mortgage (and, presumably, the note it secured) to Merrill Lynch Mortgage Capital, c/o Fairbanks Capital Corporation, on March 29, 2001, and recorded that assignment in the registry of deeds two and one-half years later, on December 19, 2003.

In November of 2001, Select Portfolio notified Dillon that he was delinquent in making his payments and his account was in arrears.  Dillon says that because he was not properly notified of the transfer of servicing rights to Select Portfolio, he made his September and October payments to his original lender, Alliance.  It is unclear whether Alliance forwarded those payments to Select Portfolio.  But, according to Dillon, Select Portfolio began imposing "illegal" late fees on Dillon's account in late 2001.

In 2002, Dillon says he made timely mortgage payments, but Select Portfolio continued to insist that his account was in arrears.  Dillon also says his numerous requests for a statement outlining the payments he had made, the outstanding balance on his account, and the basis and nature of all late fees/penalties imposed against his account were ignored.  Eventually, he sought

and obtained the assistance of a representative of the New
Hampshire Banking Commission, who attempted to resolve the
problems involving Dillon's account.  Nevertheless, in June of
2002, Dillon received notice that: (1) Select Portfolio had
unilaterally purchased hazard insurance to insure his home (i.e.,
its collateral); and (2) it intended to foreclose on its
mortgage.

Dillon, with the assistance of the New Hampshire Banking
Commission, succeeded in persuading Select Portfolio to hold off
on the foreclosure proceedings, at least for a short time.  But,
in December of 2003, Select Portfolio again notified Dillon of
its intent to foreclose on the mortgage.  At that point, Dillon
filed a petition for preliminary and permanent injunctions to
enjoin the foreclosure in the New Hampshire Superior Court.
Dillon v. Fairbanks Capital Corp., et al., Civ. No. 04-E-25
(2004).  Named as defendants in that proceeding were the same
entities named in this suit (or their assigns or entities in
privity with them): Fairbanks Capital Corporation (now, Select
Portfolio), LaSalle National Bank Association, Merrill Lynch
Mortgage Capital Investors, and Harmon Law Offices.  Only one
defendant in this case – the PMI Group, Inc. – was not also named
in Dillon's state court proceeding.  On January 20, 2004, the

state court issued a temporary restraining order, preventing
Fairbanks/Select Portfolio from proceeding with the foreclosure.

According to Dillon's second amended complaint, following a
trial on the merits, the state court entered an order on August
25, 2005, in which it held that Select Portfolio's efforts to
foreclose the mortgage were illegal.  The court also concluded
that Select Portfolio had breached its obligations to Dillon by
refusing to accept properly tendered monthly payments and by
unilaterally purchasing hazard insurance for the property (and
seeking to charge Dillon for it), when Dillon had presented
documentation demonstrating that he already had such insurance in
place.  Later, in an order addressing Dillon's request for
attorney's fees, the court held that it:

> considers the respondents in the instant action to have
> acted unreasonably and with bad faith, by improperly
> assessing Dillon and accelerating the mortgage, thereby
> creating a "predatory scheme of penalties" that
> generated the "default" at issue and deprived Dillon of
> the rights to which he was entitled (and which he
> should freely have enjoyed) under the plain terms of
> the mortgage agreement.

Second amended complaint at para 16 (quoting the state court's
fees order).[2]

---

[2]     Although Dillon's second amended complaint represents
that various orders of the state court are attached as appendices

Subsequently, Dillon says Select Portfolio continued to engage in a pattern of improper and illegal actions with respect to his note and mortgage.  Accordingly, in August of 2006, he returned to the state superior court with a motion seeking to hold Select Portfolio in contempt.  Later that month, the court granted Dillon's motion, concluding that Select Portfolio was in contempt of the court's original order and had, among other things, failed to provide Dillon with an accurate billing statement and illegally assessed late charges against him. Dillon claims that since the state court issued its order, Select Portfolio has complied with only some of the numerous corrective actions the court directed it to undertake.

On December 22, 2006, Dillon filed this suit in the New Hampshire Superior Court.  Defendants removed it to this court.

## Discussion

I.   <u>Non-Viable Claims</u>.

In response to defendants' motions to dismiss, plaintiffs acknowledge that several counts in their second amended complaint fail to state viable causes of action.  Accordingly, they concede that it is appropriate to dismiss count three (Federal Fair

---

to the complaint, they are not.

Credit Reporting Act), count 17 (avoidance of the promissory note), count 18 (violation of the state court consent decree), and count 22 (agency/respondeat superior).  As to those counts, then, defendants' motions to dismiss are granted.

II.  <u>Ms. Kresge Lacks Standing</u>.

Plaintiffs' second amended complaint does not allege that Kresge had an ownership interest in Dillon's home, nor does it allege that she co-signed the promissory note, or the mortgage deed securing that note.  Rather, it simply asserts that, "[a]t all times relevant to this matter, Ms. Kresge is and has been Mr. Dillon's fiancee, life partner and partner in various business and commercial enterprises."  <u>Id</u>. at para. 2.

Because she was not a party to any of the transactions that form the bases of the causes of action advanced on the second amended complaint, Kresge concedes that she lacks any type of contractual claim against the defendants.  Nevertheless, she asserts that she was a foreseeable victim of defendants' (allegedly) tortious conduct toward her fiancé (Dillon) and, therefore, says she does have viable common law claims against defendants.  In support of that position, Kresge asserts that "New Hampshire law recognizes that persons in an intimate but

10

unmarried relationship may be foreseeable victims of a physical

tort, entitling them to bring an action for infliction of

emotional distress." Plaintiffs' memorandum (document no. 40) at

32 (citing <u>Graves v. Estabrook</u>, 149 N.H. 202, 208-10 (2003)).

To be sure, New Hampshire law does permit recovery by

bystanders who witness an accident involving a person to whom

they are "closely related." <u>See generally</u>, <u>Corso v. Merrill</u>, 119

N.H. 647 (1979). <u>See also</u> <u>Graves</u>, 149 N.H. at 203 (holding that

the fiancee of a man killed in an automobile accident had a

common law cause of action for negligent infliction of emotional

distress). Importantly, however, recovery has always been tied

to the plaintiff's ability to demonstrate that he or she actually

observed a family member or close relative experience some sort

of serious physical injury (e.g., death or injuries resulting

from an automobile accident caused by the defendant's

negligence).

> Under the emerging law allowing parent recovery for
> emotional distress, the plaintiff must still prove that
> his injury was foreseeable, that the defendant was at
> fault, and that his injury directly resulted from <u>the</u>
> <u>accident</u>. Plaintiff's burden of proving causation in
> fact should not be minimized.  <u>The emotional injury</u>
> <u>must be directly attributable to the emotional impact</u>
> <u>of the plaintiff's observation or contemporaneous</u>
> <u>sensory perception of the accident and immediate</u>
> <u>viewing of the accident victim</u>.  Therefore, recovery
> will not be permitted for emotional distress when the

> plaintiff is merely informed of the matter after the
> accident or for the grief that may follow from the
> death of the related accident victim.

Corso, 119 N.H. at 656 (citations omitted).  In fact, the New

Hampshire Supreme Court has specifically rejected claims, like

those asserted by Kresge, in which the plaintiff was not a

bystander/witness to a serious accident.

> In count IV of the amended writ, Mrs. Jarvis seeks
> recovery for the negligent infliction of emotional
> distress.  She claims that the defendant's refusal to
> pay for home-nursing services by an L.P.A. resulted in
> a horrifying emotional experience for her, as she
> watched her husband deteriorate in helpless agitation
> and combativeness.

> In support of this argument, she relies upon the Corso
> case, in which this court recently recognized the right
> of parents to recover damages for the emotional
> distress resulting from their contemporaneous
> perception of a serious accident in which their child
> was injured.  We do not find sufficient similarity
> between the two cases to apply the Corso holding to
> this case.  The instant case concerns an allegation of
> denial of insurance coverage rather than an allegation
> of infliction of serious physical injury upon Mr.
> Jarvis which Mrs. Jarvis could have contemporaneously
> perceived.  The plaintiffs' reliance upon Corso is
> misplaced and, therefore, upon remand, Count IV should
> be dismissed.

Jarvis v. Prudential Ins. Co. of America, 122 N.H. 648, 652-653

(1982).

Like the plaintiff in <u>Jarvis</u>, Ms. Kresge does not have a viable claim for negligent (or intentional) infliction of emotional distress arising out of defendants' allegedly wrongful treatment of Dillon.  Her claims against all defendants are necessarily dismissed.  And, since Kresge is not a proper plaintiff in this case, Dillon lacks a viable claim for loss of consortium allegedly caused by injuries inflicted upon her (count 21).  Rather than a specific cause of action, Dillon's claim for loss of consortium is better viewed as an item of his claimed consequential damages.

III. <u>Claims Against PMI</u>.

Select Portfolio and its business partners are the primary focus of the claims set forth in the second amended complaint. Dillon does, however, advance several claims against the PMI Group, Inc. ("PMI").  According to Dillon, "PMI was the majority stock holder and parent company of [Select Portfolio] from the inception of Mr. Dillon's relationship with [Select Portfolio], up until August of 2005 when they sold their interest in the company and, at various times relevant to this lawsuit, placed and maintained its representatives on the [Select Portfolio] Board of Directors."  Amended complaint at para. 3.

Of the remaining claims in Dillon's amended complaint, nine are against PMI (or, more specifically, those counts are against all defendants; none is brought solely against PMI).  They are as follows:

Count 4:  Negligence;

Count 7:  Negligent infliction of emotional distress;

Count 8:  Intentional infliction of emotional distress;

Count 11: Breach of fiduciary duty;

Count 16: Fraud;

Count 19: Deceptive trade practices, in violation of N.H. Rev. Stat. Ann. ("RSA") ch. 358-A;

Count 20: Deceptive trade practices, in violation of RSA ch. 358-A;

Count 23: Conspiracy; and

Count 24: Civil RICO violations.

Dillon appears to ground his claims against PMI on a theory of vicarious liability, based upon PMI's status as the majority stockholder of Select Portfolio, as well as the presence of three PMI employees on Select Portfolio's eight-member board of directors.  Dillon's theory, it would seem, is that PMI must have known of the allegedly unlawful conduct in which Select Portfolio was engaged and, despite both a duty and the ability to do so, failed to stop it.

14

The second amended complaint, however, contains few factual allegations concerning PMI.  Dillon concedes as much.  <u>See</u> Plaintiffs' memorandum (document no. 39) at 2 ("On review, it is apparent that the [second amended] complaint pays more attention to the relationship among [Select Portfolio] and the other Defendants through the so-called REMIC in which Mr. Dillon's loan ha[d] been placed than to the actions of PMI.").  But, having acknowledged the pleading deficiencies in the second amended complaint, Dillon has taken a somewhat unusual approach in an effort to cure those deficiencies.  Rather than seek leave to file a third amended complaint, he has offered to "augment" his existing complaint with additional factual allegations:  "The simple fact is that Plaintiff's case is based on ongoing research, as a result of which <u>Plaintiff is prepared to offer</u> a more definitive statement definitively establishing PMI's place as a defendant in this law suit.  <u>If called upon to do so</u>, Plaintiff would be prepared to adduce the following, drawn primarily from public records."  Plaintiff's memorandum (document no. 39) at 3 (emphasis supplied).

Dillon's proposed negotiation with the court, in which he offers to produce additional material in response to the pending motions <u>if</u> the court deems it necessary or helpful, falls outside

the process described by the Federal Rules of Civil Procedure.

Dillon has not been "called upon" to do anything other than

respond (if he so chooses) to PMI's motion to dismiss.  And, of

course, that response must comply with the Rules of Civil

Procedure and this court's local rules.  Dillon's proposed

proffer of additional factual allegations complies with neither,

and cannot be a factor in resolving the pending motion.  See

generally Fed. R. Civ. P. 15; Local Rule 15.1.


Even if credited as being entirely true, the few allegations

set forth in the second amended complaint related to PMI are

insufficient to impose vicarious liability for the (allegedly)

unlawful conduct of Select Portfolio.  Nor are those allegations

sufficient to justify piercing Select Portfolio's corporate veil

to impose liability on PMI as one of Select Portfolio's

shareholders.  PMI is, then, entitled to dismissal of all claims

advanced against it in Dillon's second amended complaint.


IV.  The Remaining Defendants.

Defendants Select Portfolio, Harmon Law Offices, P.C.,

Merrill Lynch Mortgage Capital ("MLMC"), Merrill Lynch Mortgage

Investors ("MLMI"), and LaSalle Bank National Association

(collectively, the "Select Portfolio Defendants") move to dismiss

16

all claims advanced in the second amended complaint on grounds that they are barred by the doctrine of res judicata, precluded by the applicable statutes of limitations, and/or fail to state viable causes of action.  Dillon objects.

    A.  <u>Res Judicata</u>.

As to defendants' assertion that Dillon's claims could have (and, in fact, should have) been raised in the context of his earlier state court litigation and, therefore, are barred by the doctrine of res judicata, such an affirmative defense is better resolved in the context of a motion for summary judgment.  That is particularly true in this case, given the fact that, although numerous, Dillon's causes of action against various defendants are not well-defined.  It is impossible to determine whether some of Dillon's claims had accrued when he initiated the state court litigation.  Accordingly, the Select Portfolio Defendants' motion to dismiss Dillon's second amended complaint on grounds of res judicata is denied, but without prejudice to refiling in the context of a well-supported motion for summary judgment.[3]

_____

[3]    The court notes that the Select Portfolio Defendants have already filed such a motion for summary judgment (document no. 58).  But, that motion is not yet ripe for review since Dillon has not filed an objection and the time within which he may do so has not yet expired.

17

B.   <u>Statute of Limitations</u>.

The same is true with regard to defendants' arguments that Dillon's claims are barred by the applicable statutes of limitations.  Given the limited record before the court, it seems prudent to resolve that affirmative defense after the record is more fully developed.  As noted, the general, non-specific nature of Dillon's complaint makes it difficult to determine exactly which (allegedly) wrongful conduct forms the basis of his claims.  Accordingly, it is impossible to know with any degree of certainty when most of Dillon's causes of action actually accrued.  The Select Portfolio Defendants' defense, based on the pertinent statutes of limitations is, then, best addressed in the context of summary judgment.  Their motion to dismiss all counts in Dillon's second amended complaint on grounds that each is barred by the applicable statute of limitations is denied, but without prejudice.

C.   <u>Failure to State a Claim</u>.

As noted above, the court may properly dismiss one or more of Dillon's causes of action for failure to state a claim only if the second amended complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery," <u>Gooley</u>, 851 F.2d

18

at 515, and/or "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory," Langadinos, 199 F.3d at 69.  Given the highly deferential nature of the applicable standard of review, most of Dillon's claims must necessarily survive defendants' efforts to dismiss them. There are, however, exceptions.

For example, in count 12 of the second amended complaint, Dillon bases his defamation claim, at least in part, on allegations that Select Portfolio "disseminated and published derogatory statements regarding [him] to national credit reporting agencies."  Id. at para. 101.  But, 15 U.S.C. § 1681h(e) specifically provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency" unless the wrongful disclosure was made with malice or the willful intent to injure the consumer. Because the second amended complaint does not allege that Select Portfolio or Harmon acted with malice or the intent to injure, those defendants are entitled to the dismissal of that aspect of count 12.

As to Dillon's claims under the New Hampshire Consumer Protection Act (counts 19 and 20), he concedes that the Select Portfolio Defendants, with the exception of MLMI and MLMC, are exempt from the provisions of that statute.  Those defendants are, then, entitled to dismissal of counts 19 and 20.  Whether MLMI and/or MLMC are exempt from the provisions of that statute (as entities subject to the jurisdiction of the New Hampshire Banking Commissioner) can be resolved in the context of summary judgment.

## Conclusion

For the foregoing reasons, as well as those set forth in PMI Group's legal memoranda (documents no. 33-2 and 45), PMI Group's motion to dismiss (document no. 33) is granted.

Select Portfolio's motion to dismiss (document no. 35) is granted in part and denied in part, as follows:  All of the claims advanced by Jennifer Kresge are dismissed for failure to state a claim.  Because plaintiffs concede that the following counts fail to state a viable cause of action, they, too, are dismissed: count three (Federal Fair Credit Reporting Act), count 17 (avoidance of the promissory note), count 18 (violation of the state court consent decree), and count 22 (agency/respondeat

20

superior).  Count 21 (loss of consortium), which is more properly
pled as an item of Dillon's damages, rather than a common law
cause of action, is also dismissed for failure to state a claim.

Finally, the Select Portfolio Defendants, with the exception
of the Merrill Lynch entities, are entitled to dismissal of
counts 19 and 20 (deceptive trade practices in violation of the
Consumer Protection Act).  And, as to count 12 (defamation),
defendants Select Portfolio and Harmon are entitled to dismissal
of that portion of the count that alleges Dillon was defamed as a
result of defendants' statements to credit reporting agencies.

     **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 28, 2008

cc:  Walter L. Maroney, Esq.
     Dorothy A. Davis, Esq.
     William P. Breen, Esq.
     Edmund J. Boutin, Esq.
     Steven A. Clark, Esq.