UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Michael C. Dillon

     v.                          Civil No. 07-cv-0070-JL
                                   Opinion No. 2009 DNH 012

Select Portfolio
Servicing, Inc. *et al.*

**O R D E R**

Michael C. Dillon and his fiancée, Jennifer Kresge, brought
a twenty-four count complaint against a number of defendants,
alleging a variety of misfeasance in their handling of Dillon's
mortgage loan.  Certain of these claims, including all claims by
Kresge and all claims against defendant PMI Group, Inc., were
dismissed upon motion by a prior order of this court.  2008 DNH
019 (McAuliffe, C.J.).[1]  The remaining defendants now seek
summary judgment on the rest of the second amended complaint,
arguing, among other things, that they are barred by res judicata
as the result of the final disposition of a prior action Dillon
brought against many of the same parties in New Hampshire state

---

[1]Though Chief Judge McAuliffe subsequently vacated that
order, when he recused himself from the case, he did so without
prejudice to the refiling of the motion and objection.  After
those papers were refiled, this court granted the motion to
dismiss again, adopting the reasoning of Chief Judge McAuliffe's
order.

court, <u>Dillon v. Fairbanks Capital Corp.</u>, No. 04-E-25 (N.H.
Super. Ct. July 1, 2007) ("<u>Superior Court Judgment</u>").

        This court has diversity jurisdiction over this matter
between the plaintiffs, citizens of New Hampshire, and the
defendants, various out-of-state corporations, under 28 U.S.C.
§ 1332.  The court also has jurisdiction under 28 U.S.C. § 1331
(federal question) and 1367 (supplemental jurisdiction) by virtue
of the plaintiffs' claims under various federal statutes.  After
hearing oral argument, and for the foregoing reasons, the
defendants' motion for summary judgment is granted.


**I.   <u>Background</u>**

        The following facts are set forth in the light most
favorable to Dillon.  They are derived largely from the findings
in the Superior Court's final order, on which Dillon heavily
relies and which, as this tactic implies, are binding on the same
defendants here by virtue of collateral estoppel.  <u>See</u>, <u>e.g.</u>,
<u>Stewart v. Bader</u>, 154 N.H. 75, 80-81 (2006).[2]

_____

        [2]The Superior Court's ultimate findings are not binding on
defendant Harmon Law Offices, P.C., which was dismissed from that
action before the findings were made, <u>see</u> 18A Charles Alan Wright
<u>et al.</u>, <u>Federal Practice and Procedure</u> § 4449, at 338-39 (2d ed.
2002), absent some basis for privity between Harmon and the other
defendants, which has not been urged.  Given this court's
ultimate disposition of the summary judgment motion, however,
there is no prejudice to Harmon in binding it to the Superior

In April 2001, Dillon borrowed just over $100,000 from a division of Superior Bank, securing the debt with a mortgage on his home in Manchester, New Hampshire.  He later received a notice from defendant Select Portfolio Servicing ("SPS")--known at the time as "Fairbanks Capital Corporation"[3]--that it had acquired Superior's rights to the loan, effective October 1, 2001.  At that point, however, Dillon had already submitted checks for his September and October payments on the loan to Superior.  He was able to stop payment on these checks, but by the time he resubmitted the payments to SPS, they were late.

In November 2001, before Dillon had resubmitted both of these payments to SPS, it demanded that he remit more than $2,000 in allegedly overdue payments on the loan.  Dillon began communicating with SPS to resolve this demand, which he believed to be the product of an accounting error, possibly arising from the transfer of the debt from Superior to SPS.  SPS also demanded that Dillon provide proof of property insurance on his home, though he had previously given that documentation to Superior. Dillon resubmitted the proof of insurance to SPS, but it

---

Court's findings.  And Harmon's pretrial dismissal still has res judicata effect, as discussed infra.

[3]For clarity's sake, the court will henceforth refer to this entity as "SPS," regardless of its name at the time of the events in question.

nevertheless secured a policy on his home against his will and began charging him for the premiums.

Then, after Dillon had submitted his November and December payments, SPS notified him in January 2002 that he was one month in arrears on the loan--inaccurately, because, by that point, Dillon had submitted a payment to SPS for each month.  This commenced a series of correspondence from SPS that often contradicted itself on the amount of Dillon's allegedly overdue payments.  Dillon did not make his payments for February or March 2002 until mid-April 2002, due to unrelated problems, but that remission included all required late payment fees, as well as the April installment.

Dillon went on to make the monthly payments for May and June, but SPS returned the June payment to him, claiming that he was in default.  Dillon later resubmitted that payment, together with his July payment, but SPS refused those sums as well, leading him to give up on making payments altogether.  Through a June 2002 letter from its counsel, Harmon Law Offices, SPS notified Dillon that it intended to accelerate the balance due on the loan and foreclose on the mortgage.  Dillon enlisted the help of the New Hampshire Banking Commission, which convinced SPS to hold off on foreclosure proceedings in light of the dispute over his payment history.  On December 23, 2003, however, SPS, through

4

Harmon, notified Dillon that his home was to be sold at a foreclosure auction on January 26, 2004.

Dillon, through counsel, promptly filed the aforementioned action in New Hampshire Superior Court, seeking, among other remedies, to enjoin the foreclosure.  His petition named the following defendants:  Fairbanks Capital Corporation (which, as previously noted, was the former name of SPS, a defendant here), "LaSalle National Bank Association" (which is a transposition of the name of LaSalle Bank National Association, a defendant here), "Merrill Lynch Mortgage Capital Investors" (which is a misrecitation of the name of Merrill Lynch Mortgage Capital, Inc., a defendant here), and Harmon Law Offices.  Merrill Lynch Mortgage Capital bought Dillon's debt from SPS in 2001 and, in 2003, transferred it to LaSalle in its capacity as trustee for an entity Dillon calls "MLMI REMIC Series 2002-AFC1."[4]

The petition alleged, among other things, that SPS had misapplied Dillon's payments, wrongfully assessed late fees, and engaged in unfair and improper accounting practices; that its

---

[4]It appears, based on a filing in the Superior Court, that the name of this entity is actually "Merrill Lynch Mortgage Investors Trust, Series 2002-AFC1."  Though the connection of defendant Merrill Lynch Mortgage Investors, Inc. to the events at issue here is not apparent from the materials on file, counsel for defendants explained at oral argument that the entity was the settlor of the trust and, as such, a holder of Dillon's debt at one point.  Dillon agreed with this characterization.

representatives "called [his] home and cell phone almost
continuously during the day and evening" about his allegedly
overdue payments; that the pending foreclosure action had caused
paying tenants at Dillon's home to move out, leaving him without
income; and that the defendants "failed to take reasonable steps
to insure that a reasonable and fair price is obtained" at the
pending foreclosure auction, "thereby causing irremediable harm."
The petition asked the Superior Court to enjoin the foreclosure
sale, both preliminarily and permanently, order the defendants to
provide Dillon with an accounting of any arrearage on his loan
and an opportunity to cure, and for "such other and further
relief as [the] court deems equitable and just."

        The Superior Court issued an ex parte restraining order and,
following a hearing, a preliminary injunction against the
foreclosure sale.  Between the issuance of these decrees,
however, Harmon sent multiple notices to Dillon telling him that
the foreclosure sale had been rescheduled for the day after the
scheduled injunction hearing.  Following the entry of the
preliminary injunction, Harmon filed a motion to dismiss, arguing
that the petition failed to allege any wrongdoing on its part
aside from its actions as SPS's "legal representative," viz.,
Harmon's attempts to conduct the foreclosure sale that had
already been enjoined.  The Superior Court granted the motion,

ruling, "As there are no substantive claims against [Harmon] and because [it] cannot take any further action until this issue is resolved, [it is] not a necessary party to the litigation." Dillon v. Fairbanks Capital Corp., No. 04-E-0025, slip op. at 2-3 (N.H. Super. Ct. June 10, 2005) ("Dismissal Order").

The case against the remaining defendants proceeded to trial on the merits on June 16 and 24, 2005.[5]  On July 10, 2005, the Superior Court issued a written order noting, at the outset, that "[a]ll parties appeared with counsel" at trial and that Dillon's "Petition was never amended."  Superior Court Judgment at 1.  In this order, the Superior Court found:

> There is no doubt that [SPS's] sleight of accounting resulted in improper assessments against [Dillon] that, in turn, resulted in the 'default' and the acceleration of his mortgage . . . .  [He] never should have been placed in default to begin with, and he certainly should not have been penalized as he was with additional fees and costs for which he did not receive any notice at all, as required by the mortgage documents.  Defendant created a predatory scheme of penalties generating the default, contrary to the documents signed by the parties.

Id. at 2 (footnote and parenthetical omitted).

---

[5]Before trial, the parties filed cross-motions for summary judgment, which were denied.  In his briefing on those motions, Dillon argued that he was entitled to attorneys' fees and "all other damages incurred as a result of the Defendant's breach of its obligations to accept monthly payments," though he allowed that "the instant claim is not a claim for damages."

The Superior Court therefore issued a permanent injunction under which, in relevant part:

> defendant is enjoined from pursuing any foreclosure of [Dillon's] property based on the default declared in June, 2002 and must allow [him] an opportunity to reinstate the loan by resuming payments without penalties as of August 1, 2005.  In addition, defendant must send a separate accounting to the plaintiff, again without penalties, of the amounts it has paid for force placed insurance from March, 2002 through the present for taxes paid on the property, which plaintiff concedes he has not paid.  All other requests by the parties are denied, as they have not been pleaded.

Id. at 4.  In some of these "other requests," Dillon had asked the Superior Court to discharge the mortgage or, alternatively, to relieve him of his obligation "to pay any monies to the Defendant for the period in which the Defendant has refused payments" or any interest on those sums "due to its breach due to the Defendant's unclean hands."  The Superior Court did rule, however, that Dillon had adequately pled a claim for attorneys' fees and that, as the prevailing party, he was entitled to them.

Despite Dillon's near-complete victory, SPS was soon up to its old tricks again, forcing him to return to Superior Court to ask that SPS be held in contempt of the permanent injunction.  In its order of August 25, 2006 adjudging SPS in contempt, the Superior Court found, inter alia, that SPS had "failed to provide [Dillon] with the opportunity to reinstate his loan by failing to provide any accurate statements" since the permanent injunction

issued.  <u>Dillon v. Select Portfolio Servicing</u>, No. 04-E-0025,
slip op. at 1 (N.H. Super. Ct. Aug. 25, 2006).

In December 2006, Dillon commenced the instant case as a new
action in Superior Court; the defendants duly removed the case
here.  His second amended complaint presses a number of claims,
including violations of the Fair Debt Collection Practices Act,
15 U.S.C. §§ 1692 <u>et seq.</u>, the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. §§ 1961 <u>et seq.</u>, breach of contract,
breach of fiduciary duty, negligence, interference with
advantageous relations, infliction of emotional distress,
defamation, misrepresentation, and conspiracy.  He seeks money
damages and a variety of equitable relief.

## II.  <u>Applicable legal standard</u>

Summary judgment is appropriate where the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c).  In making this determination, the "court
must scrutinize the record in the light most flattering to the
party opposing the motion, indulging all reasonable inferences in
that party's favor."  <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d
15, 19 (1st Cir. 2003).

As noted at the outset, the defendants move for summary judgment on res judicata grounds, among others.  This is an affirmative defense on which the defendants bear the burden of proof.  <u>See</u> Fed. R. Civ. P. 8(c)(1).  As a result, the defendants are not entitled to summary judgment on their res judicata defense unless they provide conclusive evidence that it applies.  <u>See</u> <u>EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.</u>, 279 F.3d 49, 55 (1st Cir. 2002).

## III. <u>Analysis</u>

The defendants argue that Dillon's claims are barred by the res judicata effect of the Superior Court's decisions.  A federal court applies the law of the state whose courts issued the judgment in determining its preclusive effect.  <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984).  Under New Hampshire law, the doctrine of res judicata provides that a prior lawsuit precludes a subsequent one when (1) the parties or their privies in both actions are the same, (2) the cases present the same cause of action, and (3) the first action concluded with the issuance of a final judgment on the merits.  <u>Meier v. Town of Littleton</u>, 154 N.H. 340, 341 (2006).  The Superior Court proceedings meet each of these criteria.

10

First, there is no question that this action involves the same parties as the prior state-court action or, in one instance, a party in privity with them. In both lawsuits, Dillon was or is the plaintiff, and SPS (then known as Fairbanks), LaSalle, Harmon, and Merrill Lynch Mortgage Capital were or are the defendants.[6] This action also includes an additional defendant, Merrill Lynch Mortgage Investors, but Dillon conceded at oral argument that Merrill Lynch Mortgage Investors was in privity with at least one defendant to his Superior Court lawsuit.[7]

Dillon argues that Merrill Lynch Mortgage Capital and LaSalle "were at best nominal participants in the state court action" who did not submit any evidence or argument at trial. That is inaccurate: as previously noted, the state court's final order on the merits specifically stated that "[a]ll parties appeared with counsel" at trial, and proposed finding and rulings were filed by SPS "as attorney in fact for LaSalle Bank National

---

[6]As noted <u>supra</u>, LaSalle and Merrill Lynch Mortgage Capital were sued in Superior Court by the wrong names, but that does not affect the res judicata analysis. <u>See</u> <u>Restatement (Second) of Judgments</u> § 34 cmt. *d* (1982).

[7]At a minimum, Merrill Lynch Mortgage Investors is in privity with Merrill Lynch Mortgage Capital: the former is the latter's wholly owned subsidiary and the two appear to have identical interests in this matter, which seeks the same relief against both of them based on the handling of a debt each held at some point. <u>See</u> <u>Doe v. Urohealth Sys., Inc.</u>, 216 F.3d 157, 162 (1st Cir. 2000).

Association as Trustee of Merrill Lynch Mortgage Investors Trust,
Series 2002-AFC 1."

Moreover, whatever their level of participation in the
proceedings, Merrill Lynch Mortgage Capital and LaSalle were
named as defendants in state court by Dillon.  Just as this
imposes on them the burdens of the judgment, it also entitles
them to take advantage of its benefits, including its res
judicata effect.  See Restatement (Second) of Judgments § 34
(1982).  Dillon--who, at oral argument, acknowledged that these
defendants would not of course be free to ignore the Superior
Court's final order by virtue of their "nominal participation" at
trial--offers no authority to the contrary.[8]

Dillon further argues that Harmon was not a party to the
state-court suit because it was "dismissed from the action
without prejudice before trial."  While, as previously noted, a

_____

[8]Dillon states that he made "no specific claims of
wrongdoing" against Merrill Lynch Mortgage Capital or LaSalle in
the Superior Court action.  This, too, is inaccurate and
irrelevant:  in his proposed findings and rulings, Dillon alleged
a variety of wrongdoing by "Defendant," without bothering to
differentiate among the various parties he had named in the suit,
and, again, it was the act of naming them that bound them to the
judgment, regardless of their centrality to the case.  See
Restatement (Second) of Judgments § 34 (1982).  Dillon does not
argue that Merrill Lynch Mortgage Capital and LaSalle were
"nominal parties" (only "nominal participants") but, even if he
did, nominal parties may invoke res judicata as well, at least
under the circumstances present here.  See id. § 37.

party's pre-trial dismissal relieves it of the <u>collateral</u>
<u>estoppel</u> effect of trial findings, <u>see</u> note 2, <u>supra</u>, it has no
effect on the <u>res judicata</u> effect of the resulting judgment,
unless the dismissal was "purely procedural." <u>Jenks v. Menard</u>,
145 N.H. 236, 238 (2000).  And "[t]he dismissal of a writ for
failing to state a claim on which relief may be granted" is not
purely procedural.  <u>Id.</u> at 239.

Harmon was dismissed from the state action when the Superior
Court granted its motion to dismiss for failure to state a claim,
ruling that "there [were] no substantive claims against" it.
<u>Dismissal Order</u> at 2-3.  This is a "substantive decision based on
the merits of the case" and entitled to res judicata effect,
<u>Jenks</u>, 145 N.H. at 239, not, as Dillon says, a dismissal "without
prejudice."[9]  Dillon does not question that the Superior Court's
disposition of his claims against the other defendants, by way of
a permanent injunction issued after a trial on the merits, was

---

[9]At oral argument, Dillon characterized Dillon's pre-trial
dismissal as a "release" to which he had assented based on
Harmon's acknowledgment that it could not proceed with the
foreclosure in light of the Superior Court's preliminary
injunction.  That is not what the dismissal order says, but even
if Dillon is correct, it does not appear that he reserved his
rights to seek other relief against Harmon notwithstanding the
"release," so its res judicata effect is undiminished.  <u>See</u>
<u>Restatement (Second) of Judgments</u> §§ 26(1)(a), (b) (1982).

also a "final judgment on the merits" for res judicata purposes. <u>See</u>, <u>e.g.</u>, <u>Restatement (Second) of Judgments</u> § 13 cmt. *c* (1982).

This case also presents "the same cause of action" as the Superior Court litigation.  New Hampshire defines "cause of action" in this context to include "all rights to remedies with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." <u>Grossman v. Murray</u>, 141 N.H. 265, 269 (1996) (<u>quoting</u> <u>Dennis v. R.I. Hosp. Trust Nat'l Bank</u>, 744 F.2d 893, 898 (1st Cir. 1984)). Dillon argues that "the gravamen of [his] claims in this action are [*sic*] substantially different from the claims raised or--as a practical matter--capable of being raised in the prior State Court proceeding," (emphasis omitted), which, he says, was "no more than an action to enjoin foreclosure."  The court disagrees.

First, the substance of Dillon's claims here is the same as the substance of his claims in the Superior Court action:  a series of wrongful actions by the defendants in servicing his loan and attempting to foreclose on his mortgage.  <u>Compare</u> Superior Court Petition ¶¶ 1-21, 33-35, 41 <u>with</u> Second Amended Complaint ¶¶ 8-13, 17-21, 28.  Dillon's federal complaint does newly allege arrangements between SPS and the other defendants which "provided incentives to SPS to manipulate Mr. Dillon's accounts" to generate penalties and, ultimately, a foreclosure.

14

But this changes only his allegations about the defendants'
motives, not their actionable conduct, and so does not amount to
a different "cause of action" for res judicata purposes.  "[A]
subsequent suit based upon the same cause of action as a prior
suit is barred 'even though the plaintiff is prepared in the
second action . . . to present evidence or grounds or theories of
the case not presented in the first action.'"  E. Marine Constr.
Corp. v. First S. Leasing, Ltd., 129 N.H. 270, 275 (1987)
(quoting Restatement (Second) of Judgments § 25 (1982)).[10]  The
surest indication that this case asserts the same "cause of
action" as its state-law antecedent is Dillon's exclusive
reliance on the Superior Court's findings and rulings on his
claims there as sufficient proof of each of his claims here.

    Second, Dillon does not convincingly explain why, as "a
practical matter" or otherwise, he could not have brought his

----

[10]This rule is fatal to Dillon's point, made for the first
time at oral argument, that the defendants' continued failure to
produce the note underlying his debt creates a new cause of
action for wrongful foreclosure, since a mortgagee cannot
foreclose on a mortgage he does not hold.  This is simply a
different theory supporting Dillon's claim that the foreclosure
was wrongful--a claim on which he prevailed in the Superior Court
despite not knowing at that point, he says, that the defendants
could not produce the note.  (And even that is doubtful, given
Dillon's representation at oral argument that he had been asking
to see the note since 2001, to no avail, which begs an
explanation as to how a claim arising out of the missing note
could not have been brought in the Superior Court proceedings
before June of 2004.)

present claims against the defendants as part of the Superior

Court action.  While "[c]laim preclusion should ordinarily be

denied when the remedies sought in the second action could not

have been sought in the first action," 18 Wright, supra, § 4412,

at 285, this rule generally applies only to proceedings of

"inherently limited character" such as habeas corpus and

bankruptcy, id. at 281-82.  There was nothing "inherently

limited" about the suit in the Superior Court.[11]  In New

Hampshire, "[a] litigant is free to join all claims and seek all

forms of relief, whether they be legal or equitable, in one suit.

---

[11]Dillon is mistaken to characterize his Superior Court suit
as a "statutory action" authorized by N.H. Rev. Stat. Ann.
§ 479:25, II.  That statute does create such a right of action;
it requires a foreclosure notice to include particular language
informing the mortgagor of that right, which exists as a
corollary to the mortgagee's right to foreclose by exercising its
statutory power of sale.  Bolduc v. Beal Bank, SSB, 994 F. Supp.
82, 90 (D.N.H. 1998).  Though Dillon now says that his Superior
Court action "was filed under the authority of" RSA 479:25, II,
his petition there did not so much as mention the statute.  And,
even if a claim for relief from a pending foreclosure were
statutory in nature, it does not follow that other claims could
not be joined with it.  In Eastern Marine Construction, in fact,
the New Hampshire Supreme Court upheld giving res judicata effect
to a judgment rendered in an action brought to dissolve a
statutory mechanic's lien to preclude the plaintiff's subsequent
tort claims arising from the same transaction.  129 N.H. at 272-
76.  Given the substantial similarities between an action to
prevent foreclosure on a mechanic's lien and an action to prevent
foreclosure of a mortgage, that case is highly analogous, if not
controlling, in disposing of Dillon's arguments against res
judicata here.  See also infra.

There is no separate chancery docket." <u>E. Marine Constr. Corp.</u>,
129 N.H. at 276 (internal quotation marks omitted).

Indeed, Dillon's state-court action, by the time it went to
trial if not from its commencement, was in fact "more than an
action to enjoin foreclosure." Dillon requested a variety of
other relief, <u>e.g.</u>, an accounting, discharge of the mortgage,
cancellation of the payments that became due after SPS began
refusing them, and "such other and further relief as [the] court
deems equitable and just." Furthermore, as just discussed,
Dillon <u>could have</u> sought other relief, including money damages.
<u>See</u> <u>Murphy v. Fin. Dev. Corp.</u>, 126 N.H. 536, 542-43 (1985)
(upholding monetary award for wrongful foreclosure); <u>Silver v.
First Nat'l Bank of Hillsborough</u>, 108 N.H. 390, 392-93 (1967)
(same). It is black-letter law that "[w]here the plaintiff may
in one action claim two or more remedies . . . arising from the
same transaction, but seeks fewer than all of these remedies, and
a judgment is entered that extinguishes the claim . . . he is
precluded from maintaining another action for the other
remedies." <u>Restatement (Second) of Judgments</u> § 25 cmt. <i>j</i> (1982);
<u>see also</u> <u>E. Marine Constr. Corp.</u>, 129 N.H. at 276.

Dillon objects to applying this rule here as placing "an
insurmountable burden on homeowners to discover all potential
related parties and to bring all conceivable actions against them

17

in [the homeowner's] original statutory and equitable action to enjoin foreclosure[,] or forever lose the capacity for redress." As an initial matter, res judicata does not require a plaintiff "to discover all potential related parties" to the wrongdoing by the time of filing suit, because, as just discussed, its protections extend only to the parties to that suit and their privies.  So a plaintiff does not lose his right to proceed against other parties in a second action by omitting them from the first.  See Restatement (Second) of Judgments § 34(3) (1982).

Dillon chose to name all of the defendants remaining here (or, in one case, its privies) in the Superior Court suit and, having made that choice, he was indeed obligated by fundamental principles of res judicata to assert all claims against them which arose out of the same transaction or series of related transactions, or to forever hold his peace.[12]  See Restatement

---

[12]At oral argument, Dillon explained that he was forced to name all of the defendants in the state court action because he did not know, due largely to the defendants' own stonewalling, which of them held his mortgage and was therefore the proper party to enjoin from foreclosing.  While the court sympathizes with this predicament, naming all of the defendants provided Dillon with the advantage of a judgment enforceable against all of them; with that benefit necessarily comes the burden of res judicata, as already discussed.  Furthermore, if Dillon came to realize during the Superior Court proceedings that certain of the defendants were not necessary to his objectives, he could have moved to dismiss them from the case without prejudice; this would have prevented the eventual judgment from being res judicata as to them, as noted supra.  Dillon did not do so.

(Second) of Judgments § 24 cmt. *a* (1982).  Any other result would
fly in the face of the principal purpose of res judicata "that at
some point litigation over a particular controversy must come to
an end."  E. Marine Constr. Corp., 129 N.H. at 273 (internal
quotation marks omitted); see also, e.g., Federated Dep't Stors,
Inc. v. Motie, 452 U.S. 394, 401 (1981).

Furthermore, while Dillon cannot be faulted for focusing his
initial state-court petition on staving off the imminent
foreclosure on his home, the fact remains that, after he was
immediately awarded that relief on a temporary basis, he could
have amended his petition to include other claims against the
defendants.  As the Superior Court observed, he did not, despite
the passage of some eighteen months between the filing of the
petition and the trial, and went so far as to disclaim money
damages in his summary judgment briefing there.  The New
Hampshire Supreme Court has rejected the notion that the filing
of a lawsuit on an "emergency basis" would negate the res
judicata effect of the eventual judgment under nearly identical
circumstances, i.e., the suit was commenced as an action for
temporary relief to protect the plaintiff's property, but the
plaintiff failed to take advantage of the opportunity to press
claims for other relief arising out of the same transaction as
the litigation progressed.  Eastern Marine Construction, 129 N.H.

at 277.  Dillon offers no explanation why he did not amend his

Superior Court petition to include the claims he asserts here.[13]

Because the defendants have shown by conclusive evidence

that Dillon's claims are barred by the res judicata effect of the

Superior Court judgment, they are entitled to summary judgment.[14]

Dillon objects to the disposition of this action without "an

examination by trial of [the defendants'] various

responsibilities for SPS['s] illegal conduct and the injuries

inflicted on [him] by that conduct," but the fact is those issues

_____

[13]The court observes that some of the events alleged in the
second amended complaint here did not occur until after the
Superior Court entered its order granting the permanent
injunction, which theoretically could bring them outside of its
res judicata effect.  See Wright, supra, § 4409, at 221
(proposing that the preclusive effect of an action for equitable
relief extend only to "matters arising prior to trial").  Dillon,
however, used those events as the basis for his motion for
contempt of the permanent injunction in the Superior Court; that
motion was granted in an order which amounts to a "final judgment
on the merits" in its own right for res judicata purposes.  See
United States v. Ryan, 810 F.2d 650, 654 (7th Cir. 1990); I.A.
Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1548 n.2
(11th Cir. 1986).  The only event occurring after the contempt
order which Dillon alleges is SPS's transmission of a statement
to him in September 2007 that included a charge for a "property
valuation," which he says is SPS's responsibility under the terms
of the loan; because Dillon's objection to the res judicata
defense nowhere refers to this, however, the court will disregard
it, see Beltran v. O'Mara, 405 F. Supp. 2d 140, 150 n.13 (D.N.H.
2005), but notes that it could not possibly sustain any of
Dillon's claims on the merits anyway.

[14]The court does not reach any of the defendants' other
arguments for summary judgment.

was already examined in the Superior Court trial--or at least they might have been, which is all that is required to satisfy the "same cause of action" aspect of the res judicata test, <u>see</u> <u>Grossman</u>, 141 N.H. at 269.  This is not to condone what the Superior Court found to be the "predatory scheme of penalties" employed against Dillon; it is merely to recognize that, just as res judicata prevents the defendants from continuing to litigate that point, it likewise prevents Dillon from doing the same.

## III. <u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 97) is GRANTED.  Dillon's motion to compel (document no. 124), which, if successful, would not affect the outcome of the summary judgment motion, is DENIED as moot.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 2, 2009

cc:  Walter L. Maroney, Esq.
     William P. Breen, Esq.
     Dorothy A. Davis, Esq.

21